UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEITH E. PYNE and ENRICO DESIATA, Plaintiffs, -v- CKR LAW LLP and JEFFREY RINDE, Defendants. | 24 Civ. 2912 (JPC) OPINION AND ORDER |

JOHN P. CRONAN, United States District Judge:

In September 2014, AIZ Energy SA ("AIZ") entered into an escrow agreement with Paramount Services Ltd. ("Paramount") and Defendant CKR Law LLP ("CKR"), pursuant to which CKR would serve as the escrow agent in connection with the transfer of the lease of a bank instrument from Paramount to AIZ. Under that agreement, AIZ first would transfer $700,000 into an escrow account controlled by CKR, Paramount then would furnish CKR with proof that it had delivered the bank instrument to AIZ, and finally, within one international banking day of receiving such proof, CKR would release the $700,000 to Paramount.

Plaintiffs Keith E. Pyne and Enrico Desiata claim that AIZ assigned its rights and obligations to Desiata and an entity partly owned by Pyne. Those assigned rights and obligations, Plaintiffs insist, include the receipt of loan funding from the monetization of the bank instrument's lease, which in their view is a term of the escrow agreement. In this action, Plaintiffs bring various contract, fraud, and other claims against CKR and Defendant Jeffrey Rinde, the firm's partner who oversaw the escrow payments, primarily seeking to recover the $700,000 in funds that AIZ transferred pursuant to the escrow agreement.

With discovery concluded, the parties have moved for summary judgment. Because a plain reading of the escrow agreement makes clear that it does not impose the obligations Plaintiffs seek to place on Defendants, several of their claims fail. However, genuine disputes of material fact remain over certain aspects of Plaintiffs' claims of fraud and misrepresentations that underlie their Second and Third Causes of Action. For the reasons that follow, the Court grants Defendants' motion and denies Plaintiffs' motion as to the First, Fourth, Fifth, Sixth, Seventh, and Eighth Causes of Action. The Court denies both Defendants' and Plaintiffs' motions as to the Second and Third Causes of Action.

## I. Background

### A. Facts[1]

On September 2, 2014, AIZ, represented by a business associate of Desiata named Murli "Mark" D. Datwani, entered into an escrow agreement with Paramount and CKR. Dkt. 94-2 ("Escrow Agreement") at 1. Pursuant to the Escrow Agreement, Paramount agreed to lease a bank instrument to AIZ for "a total lease fee of 12% . . . of the face value of the [bank instrument]," which entailed "an initial payment of 2% . . . into an escrow account," followed by the remaining

---

[1] The following facts are drawn from the statements of material facts filed under Local Civil Rule 56.1 in connection with Plaintiffs' motion for summary judgment, Dkt. 94 ("Pls. 56.1 Stmt."); Dkt. 122 ("Defts. 56.1 Counter Stmt."), and the Rule 56.1 statements filed in connection with Defendants' motion, Dkt. 126 ("Defts. 56.1 Stmt."); Dkt. 131 ("Pls. 56.1 Counter Stmt."). Unless otherwise noted, the Court cites to only a lead Rule 56.1 statement where the opposing parties do not dispute the fact, have offered no admissible evidence to refute that fact, or simply seek to add their own "spin" on the fact or otherwise dispute the inferences drawn from it.

In connection with their summary judgment papers, the parties have filed substantively identical versions of certain documents that are relevant to this case and are defined shortly: the Escrow Agreement, the Assignment Agreement, and the Engagement Letter. *Compare* Dkt. 94-2 *with* Dkt. 127-7 at 9-19 (Escrow Agreement); *compare* Dkt. 94-10 *with* Dkt. 127-22 at 4-12 (Assignment Agreement); *compare* Dkt. 94-13 *with* Dkt. 127-24 (Engagement Letter, with Defendants' version lacking Desiata's signature). In this Opinion and Order, the Court cites to the versions of these documents filed by Plaintiffs.

10% after delivery of the bank instrument. *Id.* Only the 2% initial payment is at issue in this action. Because the bank instrument had a face value of $35 million, that initial payment came out to $700,000. Defts. 56.1 Counter Stmt. ¶ 4. The Escrow Agreement provided that after AIZ transferred $700,000 to the escrow account, and upon Paramount providing proof that it had delivered the bank instrument to AIZ in the form of "a copy of the SWIFT MT760 with Answer Back confirming delivery of the [bank instrument] to the bank coordinates designated by AIZ," CKR would release the money to Paramount. Escrow Agreement § 4(a).

The parties agree that, between September 3, 2014, and September 6, 2014, the initial $700,000 fee was paid into the escrow account, though they appear to disagree as to who funded that amount. Defts. 56.1 Counter Stmt. ¶¶ 18-22. The parties also do not dispute that the bank instrument was delivered to AIZ. *Id.* ¶ 9 ("Paramount did 'deliver the [bank instrument] by SWIFT MT760 to the bank coordinates designated by AIZ within forty-eight (48) hours of payment of the Escrow Payment' and AIZ never provided any notice in writing or otherwise to the Escrow Agent that the SWIFT MT760 was not properly delivered."); Defts. 56.1 Stmt. ¶ 12 (same); Pls. 56.1 Counter Stmt. ¶ 12 (responding to this factual assertion by not contesting the timely delivery of the bank instrument by Paramount and stating that "Plaintiffs dispute that Defendants were entitled to release the escrow payment without due diligence *upon their receipt of fraudulent documents*" (emphasis added)).

In early October 2014, Desiata notified Rinde, the CKR partner who had handled the escrow payment, that Datwani had died. Defts. 56.1 Counter Stmt. ¶ 23. On Desiata's request, Rinde drafted an agreement assigning "all [of AIZ's] rights and obligations" that arose from (1) a joint participation agreement between AIZ and an entity called Anderson Investments International, LLC, and (2) an agreement for consulting services between AIZ and another entity,

Straightline Capital, LLC, "to Desiata with all its liability and benefits." Dkt. 94-10 ("Assignment Agreement") at 1. The Assignment Agreement stated that Desiata and Karma Investment Group, LLC ("Karma"), an entity partly owned by Pyne, would distribute the proceeds from the Assignment Agreement between themselves separately. *Id.* at 1. Desiata, Karma's managing director, and AIZ's treasurer executed the Assignment Agreement on October 29, 2014. *Id.* at 8.

A little over a week later, on November 7, 2014, Desiata entered into an engagement letter with CKR. Pls. 56.1 Counter Stmt. ¶ 36; *see* Dkt. 94-13 ("Engagement Letter"). Under the terms of the Engagement Letter, Desiata retained CKR "to assist [Panasolar Generation SA ('Panasolar')][2] in connection with its Lease of an SBLC,[3] [provide] assistance in monetizing the bank instrument and working with [Panasolar's] bank compliance officers to facilitate the receiving and acceptance of cash funds in to [sic] [Panasolar's] bank accounts, [provide] general corporate advice and [perform] other related work." Engagement Letter at 1. Plaintiffs expected to receive a commercial loan as a result of retaining CKR for the lease of a bank instrument—presumably by borrowing on AIZ's lease—but did not end up receiving the loan. Defts. 56.1 Counter Stmt. ¶¶ 10, 28-49.

---

[2] While not entirely clear from the record, it appears that Panasolar is another company in which Desiata had an ownership interest. *See* Defts. Counter Stmt. ¶ 2 (explaining why Defendants dispute the statement, "[i]n or about August of 2014, Mr. Desiata and a business associate, Mr. Mark Datwani, sought financing for a company in which they were equity partners, Panasolar Generation, S.A ('Panasolar'), through Mr. Datwani's Panamanian Corporation, AIZ Energy, S.A. ('AIZ')," but not expressing any disagreement with the assertion that Desiata and Datwani were "equity partners" in Panasolar); Dkt. 125 ("Defts. Mot.") at 4 (referring to Panasolar as "[Desiata's] company"); Dkt. 8 ("Am. Compl.") ¶ 11 ("In or about August of 2014, Plaintiffs and a business associate, Mr. Mark Datwani, sought financing for a company in which they were equity partners, Panasolar Generation, S.A.").

[3] An SBLC, or standby letter of credit, is "an agreement by a bank to pay a beneficiary on behalf of a customer who obtains the letter, if the customer defaults on an obligation to the beneficiary." *Mago Int'l v. LHB Ag*, 833 F.3d 270, 272 (2d Cir. 2016).

**B. Procedural History**

Pyne and Desiata initiated this action against CKR and Rinde on April 17, 2024, Dkt. 1, and filed the Amended Complaint on May 14, 2024, Dkt. 8. Plaintiffs plead eight causes of action titled as follows: (1) breach of contract as to the Escrow Agreement, Am. Compl. ¶¶ 86-91 ("First Cause of Action"); (2) fraud and fraudulent concealment, *id.* ¶¶ 92-104 ("Second Cause of Action"); (3) misrepresentations and omissions, *id.* ¶¶ 105-111 ("Third Cause of Action"); (4) breach of the duty of good faith and fair dealing, *id.* ¶¶ 112-116 ("Fourth Cause of Action"); (5) breach of fiduciary duty, *id.* ¶¶ 117-124 ("Fifth Cause of Action"); (6) conversion, *id.* ¶¶ 125-130 ("Sixth Cause of Action"); (7) unjust enrichment, *id.* ¶¶ 131-137 ("Seventh Cause of Action"); and (8) breach of contract as to the Engagement Letter,[4] *id.* ¶¶ 138-144 ("Eighth Cause of Action").[5] As relief, Plaintiffs seek compensatory damages of at least $750,000, interest, punitive damages, and attorneys' fees. *Id.* ¶¶ 145-154, at 26-27. Rinde and CKR each answered the Amended Complaint on July 11, 2024. Dkts. 29, 32.[6]

On October 17, 2025, following the close of discovery, Plaintiffs moved for summary judgment. Dkts. 92-94. On December 5, 2025, Defendants opposed Plaintiffs' motion, Dkts. 121-

---

[4] The Amended Complaint mentions two engagement letters: the first, dated August 31, 2024, is between AIZ, represented by Datwani, and CKR, Am. Compl. ¶ 12, Exh. 3, and the second, dated November 7, 2024, is between Desiata and CKR, Am. Compl. ¶ 26, Exh. 5. *See* Am. Compl. ¶ 140 ("Plaintiffs entered into Engagement Letters with Defendants . . . ."). Yet in seeking judgment on the Eighth Cause of Action, Plaintiffs only pursue liability for the breach of the second, *see* Dkt. 93 ("Pls. Mot.") at 13-14; Dkt. 130 ("Pls. Reply") at 21-22; *see also* Defts. Mot. at 10-11; Dkt. 121 ("Defts. Opp.") at 16-17, which is referred to herein as the "Engagement Letter." Thus, in considering these motions, the Court evaluates Plaintiffs' breach-of-contract claim only as it concerns that Engagement Letter between Desiata and CKR.

[5] In the Amended Complaint, the Fifth Cause of Action is mislabeled "Count Six" and the Sixth Cause of Action is mislabeled "Count Seven." Am. Compl. ¶¶ 117-130.

[6] On September 4, 2024, Defendants filed a third-party complaint against a number of new parties, Dkt. 46, and then voluntarily dismissed that pleading on June 3, 2025, Dkt. 79.

123, and filed their own motion for summary judgment, Dkts. 124-128.[7] Plaintiffs filed papers in further support of their motion and in opposition to Defendants' motion on December 22, 2025. Dkts. 129-131. On January 4, 2026, Defendants filed a reply in support of their motion. Dkts. 132-133. Then, on July 7, 2026, at the Court's direction, Dkt. 134, Plaintiffs filed a sworn affirmation attesting to the authenticity of any exhibits they sought the Court to consider. Dkt. 135.

On September 9, 2026, the Court issued an Order giving notice to the parties, pursuant to Federal Rule of Civil Procedure 56(f)(2), that it was considering granting summary judgment on grounds not raised by the parties, specifically, that the Escrow Agreement did not require Defendants to facilitate Plaintiffs' receipt of loan funding or to return the escrow payment in the event such funding never materialized, that the Engagement Letter does not mention the escrow transaction or provide that CKR would act as Plaintiffs' escrow agent, and that Counts Two, Three, Four, Six, and Seven are duplicative of Count One. Dkt. 136 at 1-2. The Court permitted the parties to file supplemental briefing addressing those issues. *Id.* at 3. Plaintiffs filed their supplemental submission on September 16, 2026. Dkts. 141 ("Pls. Supp. Br."), 142 ("Conway Aff."). Defendants did not make a supplemental submission.

## II. Legal Standard

A district court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

[7] Defendants refiled their papers in opposition to Plaintiffs' motion and in support of their own after the Court directed them to do so at a status conference. *See* Minute Entry, Nov. 20, 2025. Plaintiffs, however, note that in so doing Defendants "submitted numerous additional exhibits in support of their papers that they did not timely file with their original filing." Pls. Reply at 3. Plaintiffs urge the Court to disregard these exhibits. *Id.* Defendants did not respond to that request or otherwise explain why the exhibits were not included in their original filing. The Court has reviewed the exhibits, and they do not impact the analysis that follows.

Fed. R. Civ. P. 56(a). "An issue of fact is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party,'" and "[a] fact is material if it 'might affect the outcome of the suit under the governing law.'" *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In deciding a motion for summary judgment, the Court "resolve[s] all ambiguities, and credit[s] all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." *Spinelli v. City of New York*, 579 F.3d 160, 166 (2d Cir. 2009) (internal quotation marks omitted). "Summary judgment is appropriate '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Mhany Mgmt., Inc. v. County of Nassau*, 819 F.3d 581, 620 (2d Cir. 2016) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

These same standards apply when parties file cross-motions for summary judgment. *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001). "[W]hen both parties move for summary judgment, asserting the absence of any genuine issues of material fact, a court need not enter judgment for either party. Rather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Id.* (internal citation omitted). "But where, as here, the motion and cross-motion seek a determination of the same issues, the Court may consider them together." *ExteNet Sys., Inc. v. Village of Pelham*, 377 F. Supp. 3d 217, 223 (S.D.N.Y. 2019).

**III. Discussion**

Plaintiffs seek summary judgment in their favor on all claims, Pls. Mot. at 3-14, as well as an award of statutory interest, attorneys' fees, and punitive damages, *id.* at 14-16. Defendants argue the mirror image, moving for summary judgment in their favor and seeking dismissal of all

claims. Defts. Mot. at 3-11. For the reasons that follow, the First, Fourth, Fifth, Sixth, Seventh, and Eighth Causes of Action fail as a matter of law. The Court denies Plaintiffs' motion and grants Defendants' motion as to those claims. However, the Court denies Plaintiffs' and Defendants' motion as to the Second and Third Causes of Action.

**A. Breach of Contract (First and Eighth Causes of Action)**

The First and Eighth Causes of Action allege breach of contract. In the First, Plaintiffs allege that Defendants breached the Escrow Agreement. Am. Compl. ¶ 90. In the Eighth, Plaintiffs allege that Defendants breached the Engagement Letter. *Id.* ¶ 142; *see* Pls. Mot. at 13-14. For both, however, Plaintiffs have failed to present evidence that would allow a reasonable jury to conclude that either contract contained a specific provision that was breached by Defendants.

**1. Relevant Law**

To establish a breach of contract under New York law,[8] the plaintiff must prove "(1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011). A breach-

[8] The Escrow Agreement provided that it "shall be interpreted according to and subject to English law." Escrow Agreement § 15. However, other than a brief reference to English law by Defendants in their moving brief in the context of statutory interest, attorneys' fees, and punitive damages, Defts. Mot. at 11, the parties make no mention of English law and apply only New York law to this dispute, *see* Pls. Mot. at 3, 5-6, 8-9, 11, 13-15; Defts. Mot. at 3, 7, 10; Pls. Reply at 12, 22, 24, 28. Therefore, the Court applies New York law in resolving the summary judgment motions. *See, e.g.*, *Cargill, Inc. v. Charles Kowsky Resources, Inc.*, 949 F.2d 51, 55 (2d Cir. 1991) (applying New York law, despite the parties' contract containing a choice-of-law provision for Massachusetts law, because both parties "based their briefs and arguments" on New York law and therefore "[c]learly . . . expect this case to be decided in accordance with New York law"); *Atlantica Holdings, Inc. v. BTA Bank JSC*, No. 13 Civ. 5790 (JMF), 2015 WL 144165, at *6 n.5 (S.D.N.Y. Jan. 12, 2015) (finding that the parties waived any argument that English law applies, even though the contracts expressly chose English law, because "both parties rely exclusively on American law").

of-contract claim fails "in the absence of any showing that a specific provision of the contract was breached." *Gianelli v. RE/MAX of N.Y., Inc.*, 41 N.Y.S.3d 273, 274 (2d Dep't 2016); *see also Cortlandt Street Recovery Corp. v. TPG Cap. Mgmt., L.P.*, 258 N.Y.S.3d 530, 532 (1st Dep't 2026).

**2. Analysis**

The First Cause of Action arises from Defendants' alleged breach of the Escrow Agreement. Am. Compl. ¶¶ 88, 90. In moving for summary judgment, Plaintiffs argue that Defendants breached the Escrow Agreement in two ways: (1) by "fail[ing] to facilitate Plaintiffs' receipt of their promised loan funding" and (2) by "fail[ing] to return Plaintiffs' respective escrow payments" when Plaintiffs did not receive the loan funding they expected. Pls. Mot. at 4.

While the parties focus their briefing on whether AIZ assigned its rights under the Escrow Agreement to Plaintiffs, the problem for Plaintiffs is a more fundamental one: the allegedly promised loan funding is nowhere to be found in the Escrow Agreement. This prompted the Court to invite the parties to address, in supplemental briefing, what provision of the Escrow Agreement required Defendants to facilitate Plaintiffs' receipt of loan funding or to return the escrow funds in the event that the funding did not materialize. Dkt. 136 at 2. Plaintiffs have identified none. In other words, Plaintiffs are seeking to enforce a contractual obligation that does not exist.

To expound on that basic and fatal flaw, Plaintiffs' breach-of-contract claim in the First Cause of Action centers exclusively on the Escrow Agreement. Yet, Plaintiffs have not identified any provision of that Agreement that required Defendants to facilitate Plaintiffs' receipt of loan funding, nor any provision that required Defendants to return the escrow payment in the event such funding never materialized. Unhelpfully, despite its misnomer, the "Statement of Facts" in Plaintiffs' moving brief lacks any recitation of facts, instead merely "incorporat[ing] by reference

Plaintiffs' Statement of Material Facts." Pls. Mot. at 2. And even reference to Plaintiffs' Rule 56.1 statement is marginally useful, at best. Many of the factual assertions in Plaintiffs' Rule 56.1 statement lack corresponding citations to record evidence, *see generally* Pls. 56.1 Stmt.; *but see* S.D.N.Y. Loc. Civ. R. 56.1(d) ("Each statement by the movant or opponent under Rule 56.1(a) and (b), including each statement denying and controverting any statement of material fact, must be followed by citation to evidence that would be admissible and set forth as required by Fed. R. Civ. P. 56(c)."), or are disputed by Defendants, *see generally* Defts. 56.1 Counter Stmt. And nowhere in Plaintiffs' Rule 56.1 statement is mention of a contractual provision they contend was breached. Similarly, the sections of Plaintiffs' moving and opposition briefs, as well as their supplemental submission, arguing that Defendants breached the Escrow Agreement cite not a single provision of the contract that was purportedly breached. *See* Pls. Mot. at 3-5; Pls. Reply at 5-10; Pls. Supp. Br. at 4-13. Notwithstanding Plaintiffs' inexplicable failure to identify any provision of the written agreement that was breached, the Court itself has closely reviewed the Escrow Agreement, and has found no provision obligating Defendants to facilitate Plaintiffs' (or AIZ's) receipt of loan funding, nor any provision requiring Defendants to return the escrow payment in the event such funding did not materialize.[9] Indeed, Plaintiffs now acknowledge that the Escrow Agreement does not contain such a provision. Pls. Supp. Br. at 4 (conceding that "there is no such provision stated directly in the Escrow Agreement").

While the Escrow Agreement did impose certain obligations, none are ones that Plaintiffs contend Defendants failed to satisfy. The agreement provided that, within two business days of

[9] To be sure, it was not the Court's responsibility to do Plaintiffs' counsel's work here. *See Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 406 (6th Cir. 1992) ("What concept of judicial economy is served when judges . . . are required to do the work of a party's attorney?"); *cf. United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

execution, "AIZ shall deliver the Escrow Payment to the Escrow Agent [*i.e.*, Defendants]." Escrow Agreement § 1. The parties do not dispute that this provision was satisfied; in early 2014, Defendants received $700,000 in escrow payments. *See* Pls. 56.1 Stmt. ¶¶ 19-22; Defts. 56.1 Counter Stmt. ¶¶ 19-22. Defendants, as "agents" of AIZ and Paramount, were then "to hold in escrow, and to administer the disposition of, the Escrow Payment in accordance with the terms of this Agreement." Escrow Agreement § 2. Plaintiffs do not contest that this too occurred. *See generally* Pls. Mot. The Escrow Agreement then detailed that disposition of the escrow funds. As relevant here, once Paramount presented to Defendants "a copy of the SWIFT MT760 with Answer Bank confirming delivery of the [bank instrument] to the bank coordinates designated by AIZ [in the annex to the Escrow Agreement], the Escrow Agent shall release the Escrow Payment to [Paramount] within one (1) international banking day of receipt of such copy." Escrow Agreement § 4(a). Here too, Plaintiffs do not argue that timely delivery to AIZ of the bank instrument did not occur or confirmation of that delivery was not provided. *See generally* Pls. Mot. Indeed, there is no dispute that Paramount timely delivered the bank instrument to AIZ, *see* Defts. 56.1 Counter Stmt. ¶ 9; Defts. 56.1 Stmt. ¶ 12; Pls. 56.1 Counter Stmt. ¶ 12, and confirmation of that delivery was the only condition precedent in the Escrow Agreement that triggered Defendants' obligation to release the $700,000 to Paramount within one international banking day, Escrow Agreement § 4.[10] The Escrow Agreement further emphasized that "[t]he Escrow Agent undertakes to perform only such duties as expressly set forth in this Agreement." *Id.* § 5(a).

[10] In their supplemental submission, Plaintiffs argue that the Escrow Agreement "specifically incorporates" a separate agreement, which provided, "[s]hould [Paramount] not affect delivery of the [bank instrument] within 48 hours of receipt of [AIZ's] 2% initial payment as described therein, the escrow agent will return the 2% initial payment to [AIZ]," and cite a June 15, 2016 letter that they contend shows that they "provided such written notice to Defendants." Pls. Supp. Br. at 10 (citing Conway Aff., Exh. 12). But this correspondence does not support

In their supplemental briefing, Plaintiffs raise a new argument not advanced in their moving or opposition briefs: that the parties' "course of dealing" evidences the existence of a term in the Escrow Agreement requiring Defendants to facilitate loan funding. Pls. Supp. Br. at 4. But a court may not consider extrinsic evidence when the contract is unambiguous, and Plaintiffs have not shown any ambiguity in the Escrow Agreement. *See Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*, 976 F.3d 239, 248 (2d Cir. 2020) (explaining that when a contract is "straightforward and unambiguous," courts "may not consider . . . the parties' course of dealing" (internal quotation marks omitted)); *Terwilliger v. Terwilliger*, 206 F.3d 240, 245 (2d Cir. 2000) ("Under New York law, a written contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language they have employed. Construing an unambiguous contract provision is a function of the court, rather than a jury, and matters extrinsic to the agreement may not be considered when the intent of the parties can fairly be gleaned from the face of the instrument." (internal quotation marks and citation omitted)); *Klein v. Signature Bank, Inc.*, 169 N.Y.S.3d 72, 77 (2d Dep't 2022) (explaining that consideration of "parol evidence regarding an alleged course of conduct to supplement the agreement" would have been improper because the agreement's terms were "unambiguous"). Because the Court finds no ambiguity in the Escrow Agreement's recitation of the parties' obligations, resort to extrinsic evidence is not warranted.

---

Plaintiffs' newfound assertion that the bank instrument was not timely delivered. Rather, in the letter someone simply asked, on behalf of Desiata and Pyne, for information regarding the status of their request for a refund of the $700,000 and referred to an investment "that never occurred." Conway Aff., Exh. 12 ("I am hereby requesting documentation on the status of the requested refund of the $700,000.").

In the absence of identifying any provision of the Escrow Agreement that Defendants breached, Plaintiffs' breach-of-contract claim in the First Cause of Action fails as a matter of law.[11]

The Eighth Cause of Action shares the same pitfalls as the First. Plaintiffs allege in this Cause of Action that "Defendants have breached their contractual relationship with Plaintiffs by failing to provide any legal services to Plaintiffs in connection to the loan transaction between Plaintiffs and Defendants and subsequently refusing to return the retainer payment to Plaintiffs despite their demand that the retainer payment be returned." Am. Compl. ¶ 142. Plaintiffs argue that Defendants entered into the Engagement Letter "for the ostensible purpose that Defendants would facilitate the consummation of Plaintiffs' escrow transaction as Mr. Desiata's legal counsel in addition to Plaintiffs' Escrow Agent," and "failed to perform under the Parties' retainer agreement." Pls. Mot. at 13-14. Even after the Court invited the parties to explain where the Engagement Letter mentioned the escrow transaction or provided that CKR would act as Plaintiffs' escrow agent, Dkt. 136 at 1-2, Plaintiffs once again failed to identify any such provision.

By the plain terms of the Engagement Letter, Desiata retained CKR "to assist [Panasolar] in connection with its Lease of an SBLC, assistance in monetizing the bank instrument and working with [Panasolar's] bank compliance officers to facilitate the receiving and acceptance of cash funds in to [Panasolar's] bank accounts, general corporate advice and other related work." Engagement Letter at 1. Yet here too, Plaintiffs fail to point to any provision of the Engagement Letter that has been breached, and the Court's independent review has revealed none. Indeed, the Engagement Letter neither mentioned CKR's work to consummate an escrow transaction nor

[11] In their briefing, Plaintiffs also suggest a promissory-estoppel theory in connection with this breach-of-contract claim, arguing that it is "clear and unambiguous that Defendants agreed to act as Escrow Agent on behalf of Plaintiffs and work to facilitate their receipt of the loan funds." Pls. Mot. at 5. But again, the Escrow Agreement imposed neither obligation on Defendants.

provided that CKR would act as Plaintiffs' escrow agent.[12] Because Plaintiffs have not presented evidence from which a reasonable jury could find a breach of any specific provision of the Engagement Letter, the Eighth Cause of Action too fails as a matter of law.

**B. Fraud and Fraudulent Concealment (Second Cause of Action)**

Plaintiff allege in the Second Cause of Action that Defendants "knowingly made misrepresentations of fact to Plaintiffs" in two respects. Am. Compl. ¶ 95. The first theory is that Defendants engaged in fraud when they "represented to Plaintiffs that Defendants would hold Plaintiffs' Escrow Payment in trust for Plaintiffs, and return such Escrow Payment to Plaintiffs upon Plaintiffs' notification to Defendants that Defendants failed to procure a [bank instrument] for Plaintiff's [sic] benefit within two (2) international bank days of the Escrow Agreement's execution." *Id.* This theory of fraud restates the breach-of-contract claim in the First Cause of Action, with at most "the addition only of an allegation that [Defendants] never intended to perform the precise promises spelled out in the contract." *Telecom Int'l Am., Ltd. v. AT&T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001) (internal quotation marks omitted). Therefore, this theory for the Second Cause of Action is duplicative of the First Cause of Action and cannot proceed.

The second theory underlying the Second Cause of Action is not duplicative, however. Plaintiffs allege that Defendants engaged in fraud when they "represented to Plaintiffs that Defendants had previously successfully executed numerous similarly-structured transactions, and that Defendants would successfully fund Plaintiffs' promised loans." Am. Compl. ¶ 97. They argue that Rinde "fail[ed] to disclose . . . that Defendants had engaged in identical escrow transactions" in the past and that all of those transactions had failed, such that no "borrower[] ever

---

[12] In their supplemental submission, Plaintiffs now assert that the "lease of an SBLC" is the bank instrument referenced in the Escrow Agreement. Pls. Supp. Br. at 13. Even assuming this to be true, leasing an SBLC is not the same thing as facilitating an escrow transaction.

receiv[ed] their promised loan funding." Pls. Mot. at 6. And Rinde made this misrepresentation, Plaintiffs argue, "with the intent to cause them to execute the Escrow Agreement and pay $700,000.00 to Defendants in return for promised loan funds Defendants knew Plaintiffs would never receive." *Id.* at 7.[13]

**1. Relevant Law**

Under New York law, a *prima facie* fraud claim ordinarily requires a showing that "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Spinelli v. Nat'l Football League*, 903 F.3d 185, 209 (2d Cir. 2018) (internal quotation marks omitted).

**2. Analysis**

To support their claim for fraud and fraudulent concealment, Plaintiffs point to various portions of their Rule 56.1 statement. Pls. Mot. at 6 (citing Pls. 56.1 Stmt. ¶¶ 12-17). But Defendants dispute each of those paragraphs. *See* Defts. 56.1 Counter Stmt. ¶¶ 12-17. Moreover, where those paragraphs contain citations to the record, they rely on excerpts from Rinde's deposition testimony, which support a different and largely opposite proposition, *i.e.*, that Rinde did in fact disclose past transactions. Pls. 56.1 Stmt. ¶¶ 14-16 (citing Dkt. 94-4 (deposition of

[13] Unlike the first theory for the Second Cause of Action and the Fourth, Sixth, and Seventh Causes of Action, *see infra* III.B, this theory is not duplicative of Plaintiffs' breach-of-contract claim in the First Cause of Action. Plaintiffs contend that Defendants made a misrepresentation of present fact during the contract negotiations, not merely misrepresentations of a future intent to perform the contractual obligations. *See, e.g.*, *A Star Grp. v. Northland Energy Trading, LLC*, Nos. 21-797 (L), 21-798 (Con), 22-743 (Con), 22-771 (Con), 2023 WL 8613525, at *2 (2d Cir. 2023) (summary order) (citations omitted); *Four Star Cap. Corp. v. Nynex Corp.*, 183 F.R.D. 91, 109 (S.D.N.Y. 1997) ("[A] claim for fraud is actionable if it is based on allegations that a party made a misrepresentation, collateral or extraneous to the contract, that induced plaintiff to enter into such contract." (citations omitted)).

Rinde, dated May 27, 2025)). Yet Plaintiffs question whether Rinde accurately represented the success, or lack thereof, of those past transactions. *See* Pls. Supp. Br. at 15-16; Conway Aff., Exh. 17 (January 2, 2015 email recounting a statement from Rinde that he had successfully executed "between 15-20 such transactions" and "never once had a failure").

Defendants fare no better in the evidence they proffer on this Cause of Action. Defendants make the internally inconsistent argument that they are entitled to summary judgment on this claim because they "had not 'engaged in any identical escrow transactions . . . ,' nor had 'each and every one of those prior identical escrow transactions . . . failed.'" Defts. Mot. at 5. In support, Defendants cite to assertions in their Rule 56.1 counterstatement, *id.* (citing Defts. 56.1 Counter Stmt. ¶¶ 12-17), but none of those assertions is supported by record evidence. *See* S.D.N.Y. Loc. Civ. R. 56.1(d) ("Each statement by the movant or opponent under Rule 56.1(a) and (b), including each statement denying and controverting any statement of material fact, must be followed by citation to evidence that would be admissible and set forth as required by Fed. R. Civ. P. 56(c)."). For example, Defendants contend that they "were not introduced to or know of [sic] Plaintiffs" at the time that AIZ sought to procure funding, so "Defendants did not and could not [have] ma[de] the alleged representations to Plaintiffs." Defts. 56.1 Counter Stmt. ¶ 12. But Defendants fail to present any evidence showing this to be true, and, importantly, Plaintiffs dispute this very fact. *See* Pls. 56.1 Counter Stmt. ¶ 4 ("Plaintiffs dispute that Defendants were unaware of Plaintiffs and their role in funding the Escrow Agreement.").

Defendants also contend that Plaintiffs did not sign the Escrow Agreement, and that Defendants did not become Plaintiffs' legal counsel until November 7, 2014. Defts. Mot. at 5-6. But it is unclear how this undermines Plaintiffs' fraud claim. Regardless of whether a contract was in place between the parties, the relevant issues are whether Defendants falsely represented

the nature of their services and whether AIZ relied on those representations in transferring some or all of the $700,000.

Defendants also maintain that in the Assignment Agreement, Plaintiffs agreed not to sue Defendants. Defts. Mot. at 6; *see* Assignment Agreement at 2 ("Desiata and [Karma, an entity partly owned by Pyne] both completely and fully discharge . . . AIZ's attorneys . . . from . . . [a]ll actions, causes of action, suits, . . . any and all claims and demands whatsoever, of any nature, including but not limited to, in law, admiralty or equity . . . ."). "Generally, a valid release constitutes a complete bar to an action on a claim [that] is the subject of the release." *Centro Empresarial Cempresa S.A. v América Móvil*, 952 N.E.2d 995, 1000 (N.Y. 2011) (internal quotation marks omitted). "Notably, a release may encompass unknown claims, including unknown fraud claims, if the parties so intend and the agreement is fairly and knowingly made." *Id.* (internal quotation marks omitted). Plaintiffs dispute that they "knowingly" agreed to such a blanket release, contending that Defendants simultaneously drafted the Assignment Agreement and were carrying out a fraud against Plaintiffs. Pls. Reply at 22-23. A genuine issue of material fact remains as to the validity of the Assignment Agreement's release provision.

The Court thus finds that genuine disputes of material fact remain as to Plaintiffs' fraud claim on the theory that Defendants falsely "represented to Plaintiffs that Defendants had previously successfully executed numerous similarly-structured transactions, and that Defendants would successfully fund Plaintiffs' promised loans." Am. Compl. ¶ 97. The Court thus denies summary judgment for both Plaintiffs and Defendants on the Second Cause of Action. *See Morales*, 249 F.3d at 121 (observing that a court "need not enter judgment for either party" when cross-motions for summary judgment are filed).

### C. Misrepresentations and Omissions (Third Cause of Action)

Plaintiffs' Third Cause of Action rests on the premise that "Defendants had a duty to impart correct information to Plaintiffs regarding the terms of the Escrow Agreement executed by the Parties, by which Plaintiffs made Escrow Payments as detailed above in consideration for Defendants' procurement of a loan for Plaintiffs' benefit." Am. Compl. ¶ 107. Similar to their fraud claim, Plaintiffs allege that "Defendants knowingly or negligently made a misrepresentation of fact to Plaintiffs" also in two respects: (1) "when Defendants represented to Plaintiffs that Defendants would either fund Plaintiffs' promised loans or return Plaintiffs' Escrow Payment upon Defendants' failure to fund such loans," *id.* ¶ 108, and (2) "when Defendants represented to Plaintiff [sic] that Defendants had previously successfully executed numerous similarly-structured transactions, and that Defendants would successfully fund Plaintiffs' loan," *id.* ¶ 109. Plaintiffs further contend that they "reasonably relied on this information in making their respective decisions to enter into their respective Escrow Agreements with Defendants." *Id.* ¶ 110.

These two theories resemble Plaintiffs' theories for fraud and fraudulent concealment. And as with the fraud claim, the first theory is duplicative of the breach-of-contract claim in the First Cause of Action, but the second theory is not. And for the same reasons that apply to the fraud claim, material disputes of fact remain as to Plaintiffs' claim of misstatements and omissions. Thus, the Third Cause of Action, to the extent it arises from Defendants' "represent[ation] to Plaintiff[s] that Defendants had previously successfully executed numerous similarly-structured transactions, and that Defendants would successfully fund Plaintiffs' loan," *id.* ¶ 109, survives summary judgment.

**D. The Duplicative Claims**

Three of Plaintiffs' claims—the Fourth, Sixth, and Seventh Causes of Action—fail because they are entirely duplicative of the breach-of-contract claim in the First Cause of Action. Each of these Causes of Action is considered in turn.

**1. Breach of the Duty of Good Faith and Fair Dealing (Fourth Cause of Action)**

Plaintiffs allege that Defendants breached the duty of good faith and fair dealing because, based on the Escrow Agreement, "Plaintiffs expected Defendants to act in accordance with the terms of the Escrow Agreement and either fund Plaintiffs' promised loans or return the Escrow Payments to Plaintiffs upon Defendants' failure to do so and Plaintiff's [sic] written notice thereof to Defendants," *id.* ¶ 114, yet "Defendants did not return Plaintiffs' respective Escrow Payments to Plaintiffs upon their failure to fund Plaintiffs' promised loans and Plaintiffs' written notice thereof to Defendants," *id.* ¶ 115. Plaintiffs contend that "Defendants owed Plaintiffs a duty of good faith and fair dealing by virtue of the Parties' execution of their Escrow Agreement," which they violated by "consistently intentionally misrepresent[ing] the status of the loan funding and the escrow payments to Plaintiffs" and by failing to "disclose to Plaintiffs that Defendants had engaged in these same practices" before. Pls. Mot. at 9-10.

"[I]implicit in every contract is a covenant of good faith and fair dealing, which encompasses any promises that a reasonable promisee would understand to be included." *N.Y. Univ. v. Cont'l Ins. Co.*, 639 N.Y.S.2d 283, 289 (N.Y. 1995) (citations omitted). However, a claim for breach of the implied covenant must be dismissed "if it is duplicative of an insufficient breach of contract claim." *Schandler v. N.Y. Life Ins. Co.*, No. 09 Civ. 10463 (LMM), 2011 WL 1642574, at *9 (S.D.N.Y. Apr. 26, 2011) (internal quotation marks omitted). "Under New York law, claims are duplicative when both 'arise from the same facts and seek the identical damages for each

alleged breach.'" *Deutsche Bank Nat. Tr. Co. v. Quicken Loans Inc.*, 810 F.3d 861, 869 (2d Cir. 2015) (quoting *Amcan Holdings, Inc. v. Canadian Imperial Bank of Com.*, 894 N.Y.S.2d 47, 49-50 (1st Dep't 2010)).

Here, Plaintiffs rest their implied-covenant claim on the same allegations that underlie their breach-of-contract claim in the First Cause of Action—that Defendants failed to secure the promised loan funding and failed to return the escrow payment as required in the Escrow Agreement. *Compare* Am. Compl. ¶¶ 86-91 (First Cause of Action), *with id.* ¶¶ 112-116 (Fourth Cause of Action). And Plaintiffs seek the same damages under each. *Id.* at 26. The implied-covenant claim therefore fails because it is duplicative of the breach-of-contract claim in the First Cause of Action.[14]

**2. Conversion (Sixth Cause of Action)**

The Sixth Cause of Action is duplicative as well. Here, Plaintiffs assert a claim of conversion, alleging that "Defendants exercised an unauthorized dominion over each Escrow Payment when Defendants failed to return the Escrow Payments to Plaintiffs, despite Defendants' failure to fund Plaintiffs' promised loans and Plaintiffs' written notice to Defendants thereof." Am. Compl. ¶ 129; *accord* Pls. Mot. at 12.

---

[14] Plaintiffs newly contend that their implied-covenant claim is additionally premised on Defendants' breach of an "implied contract term," which provided that Defendants had a duty to facilitate Plaintiffs' receipt of their promised loan proceeds. Pls. Supp. Br. at 19. But the Amended Complaint does not allege the presence of an "implied" term, and Plaintiffs have not previously suggested that the Escrow Agreement contained one. The Court declines to reach an argument raised for the first time in their supplemental briefing on the motions for summary judgment. *Cf., e.g.*, *Lyman v. CSX Transp., Inc.*, 364 F. App'x 699, 701 (2d Cir. 2010) (finding that the district court did not abuse its discretion in declining to consider new theories of liability raised for the first time in opposition to summary judgment); *Greenidge v. Allstate Ins. Co.*, 446 F.3d 356, 361 (2d Cir. 2006) (declining to reach the merits of an argument raised for the first time in opposition to summary judgment). But to be sure, there is no basis to conclude from the plain text of the Escrow Agreement that any such implied term was part of that contract.

To state a claim for conversion, a plaintiff must allege: "(1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 204 (S.D.N.Y. 2011) (internal quotation marks omitted). Even when these elements are satisfied, however, a plaintiff's claim for conversion cannot "merely restate[] its cause of action to recover damages for breach of contract" without "alleg[ing] a separate taking." *Priolo Commc'ns, Inc. v. MCI Telecomms. Corp.*, 669 N.Y.S.2d 376, 377 (2d Dep't 1998). In other words, "[a] conversion claim may only succeed . . . if a plaintiff alleges wrongs and damages distinct from those predicated on a breach of contract." *Ellington Credit Fund*, 837 F. Supp. 2d at 204; *see also Briarpatch Ltd. v. Geisler Roberdeau, Inc.*, 148 F. Supp. 2d 321, 328 (S.D.N.Y. 2001) ("For a conversion claim to succeed in the context of a dispute regarding a contract, the breach of contract must result in some 'wrong' that is separately actionable."). To determine whether a conversion claim is truly distinct from a breach-of-contract claim, "courts look both to the material facts upon which each claim is based and to the alleged injuries for which damages are sought." *Lefkowitz v. Reissman*, No. 12 Civ. 8703 (RA), 2014 WL 925410, at *11 (S.D.N.Y. Mar. 7, 2014) (quoting *Physicians Mut. Ins. Co. v. Greystone Servicing Corp.*, No. 07 Civ. 10490 (NRB), 2009 WL 855648, at *10 (S.D.N.Y. Mar. 25, 2009)). Under this standard, conversion claims that are based on "the same facts underlying a contract claim" must be dismissed as duplicative. *Reade v. SL Green Operating P'ship*, 817 N.Y.S.2d 230, 231 (1st Dep't 2006).

Plaintiffs' conversion claim duplicates their claim for breach of contract in the First Cause of Action. Both rest on the same operative facts, namely Defendants' alleged promise to provide

Plaintiffs with loan funding under the Escrow Agreement and their subsequent failure to do so. *Compare* Am. Compl. ¶¶ 86-91 (First Cause of Action), *with id.* ¶¶ 125-130 (Sixth Cause of Action). And both seek the same $700,000 in damages. *Id.* at 26-27. Because Plaintiffs' conversion claim is not distinct from their breach-of-contract claim, the conversion claim fails as a matter of law.[15]

**3. Unjust Enrichment (Seventh Cause of Action)**

In the Seventh Cause of Action, Plaintiffs allege that "Defendants were enriched at Plaintiffs' expense because as a result of Defendants' failure to return the Escrow Payments to Plaintiffs, Plaintiffs were deprived of the funds constituting their Escrow Payments." *Id.* ¶ 135. As they argue in their papers, their theory is that "Defendants were enriched at Plaintiffs' expense by their acceptance of Plaintiffs' respective escrow payments, totaling seven hundred thousand dollars ($700,000.00), despite their knowledge that Plaintiffs would not receive the loans they were promised in exchange for said payments." Pls. Mot. at 12-13; *accord* Am. Compl. ¶ 134 ("Defendants were enriched by retaining Plaintiffs' respective Escrow Payments after failing to fund the loan promised to Plaintiffs.").

---

[15] Once again, Plaintiffs raise a new argument in their supplemental briefing. Plaintiffs now contend that their conversion claim rests on the following allegation: "'Defendants almost immediately converted the escrow funds for their own benefit' upon receipt of Plaintiffs' escrow payments." Pls. Supp. Br. at 20 (citing Am. Compl. ¶ 75). But the Amended Complaint alleges that the basis for the conversion claim is merely that "Defendants failed to return the Escrow Payments to Plaintiffs, despite Defendants' failure to fund Plaintiffs' promised loans and Plaintiffs' written notice," Am. Compl. ¶ 129, and it was only on that basis that Plaintiffs argued the merits of their conversion claim, *see* Pls. Mot. at 12; Pls. Reply at 18-19. Once again, the Court declines to reach an argument raised for the first time after initial briefing for the motions for summary judgment. *Cf., e.g.*, *Lyman*, 364 F. App'x at 701; *Greenidge*, 446 F.3d at 361. And to be sure, Plaintiffs have presented not a sliver of evidence that "Defendants almost immediately converted the escrow funds for their own benefit," Am. Compl. ¶ 75.

"The basic elements of an unjust enrichment claim in New York require proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Pauwels v. Deloitte LLP*, 83 F.4th 171, 186 (2d Cir. 2023) (internal quotation marks omitted). Under New York law, however, "the existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Id.* at 187 (internal quotation marks omitted). Put differently, "an unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract" claim. *In re 305 E. 61st St. Grp. LLC*, 130 F.4th 272, 282 (2d Cir. 2025) (internal quotation marks and brackets omitted). "Two claims are duplicative of one another if they arise from the same facts and do not allege distinct damages." *Id.* (internal quotation marks omitted).

Plaintiffs' unjust-enrichment claim duplicates their claim for breach of contract in the First Cause of Action. Both rest on the same operative facts, namely Defendants' alleged promise to provide Plaintiffs with loan funding under the Escrow Agreement and their subsequent failure to do so despite receiving $700,000. *Compare* Am. Compl. ¶¶ 86-91 (First Cause of Action), *with id.* ¶¶ 131-137 (Seventh Cause of Action). And both seek the same $700,000 in damages. *Id.* at 26-27.[16] Thus, Plaintiffs' unjust-enrichment claim fails as a matter of law as duplicative of the breach-of-contract claim as well.

---

[16] In their supplemental briefing, Plaintiffs newly argue that there is a dispute as to "whether or not the Escrow Agreement covers the issues in dispute." Pls. Supp. Br. at 22. But, as discussed above, the Court refuses to reach arguments raised for the first time in Plaintiff's supplemental briefing on summary judgment. *Cf., e.g.*, *Lyman*, 364 F. App'x at 701; *Greenidge*, 446 F.3d at 361. In any event, the substance of Plaintiffs' argument is that there is a dispute as to the *parties* to the Escrow Agreement, not the *subject matter*, or issues, covered by the agreement. *See* Pls. Supp. Br. at 22.

**E. Breach of Fiduciary Duty (Fifth Cause of Action)**

While Plaintiffs' claim of breach of fiduciary duty in the Fifth Cause of Action is not duplicative, it nonetheless fails as well. Plaintiffs allege that "Defendants, as Escrow Agent, owed an affirmative duty of care and loyalty to their escrow beneficiaries," Am. Compl. ¶ 120, and additionally owed such a duty to Plaintiffs as Plaintiffs' "counsel in relation to the escrow transaction between Defendants and Plaintiffs pursuant to the Engagement Letters between the Parties," *id.* ¶ 121. Plaintiffs further allege that "Defendants breached their fiduciary duty to Plaintiffs under applicable state and federal securities laws and exchange rules in a reckless, willful, and wanton manner and with total disregard for the legal and fiduciary rights of Plaintiffs, by fraudulently inducing Plaintiffs to make escrow payments to Defendants and converting their funds." *Id.* ¶ 123. In their summary-judgment briefing, Plaintiffs clarify that they believe Defendants breached their fiduciary duty as Plaintiffs' escrow agent and as Desiata's attorney in two ways: first, "by fraudulently inducing the Plaintiffs to enter into the Escrow Agreement and pay $700,000.00 to Defendants," and then second, "by concealing their fraud from Plaintiffs over the course of years, and by refusing to return each Plaintiff's escrow payment to each Plaintiff through the present date." Pls. Mot. at 10-11.

To prevail on a claim for breach of fiduciary duty in New York, a plaintiff must establish "(1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct." *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 241 (2d Cir. 2020) (internal quotation marks omitted); *accord Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011) ("The elements of a claim for breach of a fiduciary obligation are: (i) the existence of a fiduciary relationship; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom." (citing *Barrett v. Freifeld*, 883 N.Y.S.2d 305, 308 (2d Dep't

2009))). Both of Plaintiffs' theories for this claim fail on the first prong: the existence of a fiduciary relationship.

CKR was the escrow agent for the transaction between AIZ and Paramount when the Escrow Agreement was executed and the escrow payments were made. Defts. 56.1 Counter Stmt. ¶¶ 18-22. At that point, Plaintiffs were not party to the Escrow Agreement. Plaintiffs therefore attempt to assert their rights under the Escrow Agreement by virtue of the Assignment Agreement. Pls. 56.1 Stmt. ¶ 24 ("AIZ, Mr. Desiata, and Karma Investment Group ('KIG') . . . executed [the Assignment Agreement], by which AIZ assigned its rights and obligations related to the Escrow Transaction to Mr. Desiata and KIG."). But even assuming *arguendo* that the Assignment Agreement successfully assigned AIZ's rights and obligations under the Escrow Agreement to Plaintiffs, the assignment did not contain any provision that somehow additionally establishes a historic fiduciary relationship between Defendants and *Plaintiffs*. As Defendants argue, "Defendants were not the 'Plaintiff's Escrow Agent.' Defendants were the escrow agent for AIZ." Defts. Mot. at 8. Even a successful assignment of AIZ's rights under the Escrow Agreement to Plaintiffs might at most allow Plaintiffs to assert the rights of *AIZ* and, therefore, to vindicate a breach-of-fiduciary-duty claim against Defendants on the basis that Defendants had breached their fiduciary duty to AIZ. But Plaintiffs neither allege nor argue that Defendants breached their fiduciary duty to AIZ. Rather, Plaintiffs contend that Defendants breached their fiduciary duty to Plaintiffs. In the absence of any evidence of a fiduciary relationship between Plaintiffs and Defendants in connection with the Escrow Agreement or any escrow payment, this theory fails, even assuming a successful assignment of AIZ's rights under the Escrow Agreement.

Plaintiffs also fail to establish that Defendants owed Desiata a fiduciary duty as his attorney with respect to the Escrow Agreement. To be sure, Rinde owed Desiata a duty as his attorney once

the Engagement Letter took effect. But that relationship was not established until November 7, 2014, two months after the Escrow Agreement was executed and the $700,000 in escrow payments were made. Pls. 56.1 Counter Stmt. ¶ 36. Defendants therefore could not have breached a fiduciary duty to Desiata with respect to the escrow payments, such as by "inducing the Plaintiffs to enter into the Escrow Agreement and pay $700,000.00 to Defendants." Pls. Mot. at 10-11. Plaintiffs' Fifth Cause of Action thus fails as a matter of law.

## IV. Conclusion

For the foregoing reasons, the Court grants Defendants' motion for summary judgment and denies Plaintiffs' motion for summary judgment as to the First, Fourth, Fifth, Sixth, Seventh, and Eighth Causes of Action. The Court denies Defendants' and Plaintiffs' motion as to the Second and Third Causes of Action.[17]

The parties are directed to appear for a status conference on October 13, 2026, at 4:00 p.m., in Courtroom 14C of the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York 10007. At the status conference, counsel should be prepared to discuss their availability for trial in this matter.

The Clerk of Court is respectfully directed to close Docket Numbers 92, 105, and 124.

SO ORDERED.

Dated: September 29, 2026
New York, New York

JOHN P. CRONAN
United States District Judge

[17] Plaintiffs of course are not entitled to statutory interest, attorneys' fees, or punitive damages as to the First, Fourth, Fifth, Sixth, Seventh, and Eighth Causes of Action, which fail as a matter of law. *See* Am. Compl. ¶¶ 145-154; Pls. Mot. at 14-16. Consideration of statutory interest, attorneys' fees, and punitive damages with respect to the Second and Third Causes of Action is premature.